**WASHINGTON TOXICS COALITION, Northwest Coalition for Alternatives to Pesticides, Defenders of Wildlife, Natural Resources Defense Council, and Center for Biological Diversity, Plaintiffs,**

v.

**U.S. ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

**No. C04–0113C.**

United States District Court, W.D. Washington, At Seattle.

Aug. 12, 2004.

Amy C. Williams–Derry and Patti A. Goldman, Seattle, WA, for Plaintiffs.

David M. Glass, Washington, DC, for Defendant.

## ORDER

COUGHENOUR, Chief Judge.

### I. INTRODUCTION

This matter comes before the Court on Defendant U.S. Environmental Protection Agency's ("EPA") motion to dismiss, or, in the alternative, for summary judgment (Dkt. No. 8). The Court has considered the papers submitted by the parties and determined that oral argument is not necessary. For the following reasons, the Court DENIES Defendant's motion to dismiss and GRANTS Defendant's alternative motion for summary judgment.

### II. BACKGROUND

#### A. EPA and the Federal Insecticide, Fungicide, and Rodenticide Act[1] ("FIFRA")

FIFRA, enacted in 1947 and revised in 1972, regulates the use of pesticides by prohibiting the distribution or sale of any pesticide not registered with the EPA. 7 U.S.C. § 136a. The Office of Pesticide Programs ("OPP"), part of EPA, administers FIFRA. A pesticide may only be registered if, based on data conforming to EPA-established guidelines, OPP determines that the pesticide "will perform its intended function without unreasonable adverse effects on the environment." *Id.* § 136a(c)(5). This evaluation depends, in part, on whether the pesticide violates the Endangered Species Act[2] ("ESA"), because of its potential to "jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species." 16 U.S.C. § 1536(a)(2). OPP frequently directs registrants of pesticides to submit data, called "species proximity data," to determine whether this is the case. (Def.'s Mot. to Dismiss at 4.) Species proximity data indicates "where threatened and endangered species could be found in relation to the use sites for which the pesticides were registered." (*Id.*) After notifying EPA, pesticide registrants may form a joint data development arrangement ("JDDA"), an agreement to jointly develop or share the cost of developing data that meets EPA requirements for registering pesticides under FIFRA. 7 U.S.C. § 136a(c)(2)(B)(ii). JDDAs help interested pesticide registrants defray the cost of collecting and compiling data to show that a pesticide satisfies FIFRA's requirements.

#### B. The FIFRA Endangered Species Task Force ("FESTF")

In 1994, the National Agricultural Chemical Association ("NACA"), a national trade association for developers, manufacturers, formulators, and distributors of agricultural pesticides in the United States, began using a steering committee to seek support for the formation of a JDDA to collect and compile species proximity data as required by OPP. In 1995, NACA suc-

---

1. 7 U.S.C. §§ 136–136y.

2. 16 U.S.C. §§ 1531–1544.

ceeded in prompting development of FESTF, which was originally composed of eleven private companies. As a JDDA, FESTF's purpose was to develop data to meet OPP requirements for registering pesticides and disperse the related costs among its members, while "protecting the proprietary interests of the members of FESTF." (Def.'s Mot. to Dismiss at 5.) Before establishing FESTF, the NACA steering committee met with OPP in 1994 to determine whether the proposed methodology for gathering and compiling data through FESTF would meet OPP requirements under FIFRA and ESA. OPP confirmed that the proposed methodology would likely be acceptable, and FESTF began operating as an unincorporated association in March 1995.

FESTF first developed detailed possible procedures for obtaining species proximity data, then submitted these proposals to several organizations, including OPP and The Nature Conservancy, for comment. Based on the comments, FESTF decided that the proposed methods would not produce the appropriate data. By 1997, however, FESTF had developed another proposal for obtaining data to satisfy OPP requirements with the help of NatureServe, a nonprofit conservation organization. FESTF hired Battelle Pacific Northwest Laboratories to develop an Information Management System to compile data obtained from NatureServe about the location of endangered and threatened species. Throughout this process, FESTF maintained a relationship with OPP, frequently requesting feedback on its developing methodology for meeting OPP data requirements. EPA representatives attended some FESTF meetings, and OPP and FESTF corresponded regularly. EPA did not, however, play a role in the formation of FESTF, nor is any EPA representative a member of FESTF. EPA does not provide FESTF with financial support, and FESTF has not received public funds from any other source.

FESTF reorganized as a limited liability company under Delaware law in 1997. FESTF continued to develop software and methodology for gathering and compiling data in the following years, consulting OPP regularly about "how FESTF intend[ed] to meet the species proximity data requirements." (Id. at 10.) The parties dispute whether, throughout their years of contact, FESTF also communicated its position on pesticide "policy" matters to EPA. On April 17, 2000, OPP publicly announced the existence and purpose of FESTF and its complete proposal for meeting OPP's species proximity data requirements. The notice advised all pesticide registrants and applicants that they would be required to submit similar data, and could satisfy this requirement by joining FESTF, citing to its work and sharing its costs, or submitting their own data (also subject to OPP standards).

Plaintiffs brought this action alleging that EPA violated the Federal Advisory Committee Act ("FACA"), 5 U.S.C.App. § 2, by establishing and obtaining advice from FESTF without classifying and treating it as a federal advisory committee (see discussion infra). Plaintiffs allege that EPA's role during FESTF's formation and development indicates that EPA "established" or "utilized" FESTF, because "EPA was intimately involved in establishing FESTF ... and has repeatedly shaped and approved its evolving priorities ever since." (Pl.'s Opp'n to Mot. to Dismiss at 17.) Plaintiffs provide examples to illustrate their allegations, including a letter from FESTF to EPA in 1994 that stated that FESTF would "[d]evelop priorities in partnership with [EPA]," and that the two groups would work in "close cooperation." (Shaw Decl. 6 at 1–2.) EPA filed a motion to dismiss, or, in the alternative, a motion

for summary judgment (Dkt. No. 8), arguing that Plaintiffs do not have standing to bring this action and that FESTF is not a federal advisory committee under FACA. In their opposition to the motion to dismiss, Plaintiffs request that the Court continue consideration of the motion, arguing that they are entitled to conduct discovery on the issue of whether FESTF "was established or utilized by a federal agency because it was permeated by, organized by, or closely tied to the federal government," in order to oppose EPA's motion to dismiss. (Pl.'s Opp'n to Mot. to Dismiss at 15–16.)

## III. ANALYSIS

### A. Motion to Dismiss

EPA contests Plaintiffs' standing to bring this action, alleging that their allegation of past injury is insufficient, and their allegation of future injury too generalized and conjectural to demonstrate standing. As the following discussion demonstrates, the Court finds this contention without merit.

▮▮▮▮ To demonstrate that they have standing, Plaintiffs must show that their alleged injury is sufficiently concrete, is traceable to EPA's allegedly illegal action under FACA, and would likely be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). As the rule demonstrates, Plaintiffs must first show an "injury in fact," or a harm that is "concrete" and "actual or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Second, Plaintiffs must indicate that the injury is traceable to EPA's challenged action, and; third, that a favorable decision is likely to redress the injury. *See Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130.

In *Public Citizen v. United States Department of Justice*, a case similar to the case at bar, public interest groups sued the Department of Justice for allegedly violating FACA by "utilizing" the American Bar Association's Standing Committee on Federal Judiciary ("ABA Committee") to obtain advice about potential nominees for federal judgeships without classifying the ABA Committee as a federal advisory committee. 491 U.S. 440, 443, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989). The Supreme Court held that appellant public interest groups had standing to bring the action, because "refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449, 109 S.Ct. 2558. Similar to cases involving the Freedom of Information Act, parties attempting to obtain information under FACA need not "show more than that they sought and were denied specific agency records." *Id.* Furthermore, where a party alleges a concrete injury based on a violation of FACA such as the one in *Public Citizen*, a favorable decision will likely redress that injury because it will require the alleged federal advisory committee to provide information and access to meetings to the injured parties. *Id.* at 450–51, 109 S.Ct. 2558. Such relief would clearly redress the alleged harm, namely, unlawful denial of access to information as required by FACA. *Id.*

▮▮▮▮ Plaintiffs in the instant case are in a similar position to appellants in *Public Citizen*. They allege that a federal agency has violated FACA by failing to classify FESTF as a federal advisory committee, which has caused Plaintiffs harm by precluding their alleged right to access information about and meetings held by FESTF. First, Plaintiff's alleged injury is sufficiently concrete, because a denial of access to information in alleged violation of FACA is an "injury in fact." *See id.* at

449, 109 S.Ct. 2558. Second, Plaintiff's injury is traceable to EPA's failure to classify FESTF as a federal advisory committee, because, had EPA classified it as such, Plaintiffs would not have suffered the alleged harm. Finally, a favorable decision would redress Plaintiffs' alleged injury, because an order requiring FESTF to be classified as a federal advisory committee would allow Plaintiffs access to information and meetings under FACA. *See id.* at 450–51, 109 S.Ct. 2558. In sum, Plaintiffs have standing to bring this action. EPA's motion to dismiss is, therefore, DENIED. EPA moves, alternatively, for summary judgment, arguing that FESTF is not a federal advisory committee under FACA, because it was neither established nor utilized by EPA or by any federal agency.

## B. Motion for Summary Judgment

### 1. *Legal Standard for Summary Judgment*

Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor to determine whether there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). A genuine issue of material fact is present where sufficient evidence exists for a reasonable fact-finder to find for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations or argumentative assertions that material facts are in dispute. *Wallis v. J.R. Sim-*

*plot Co.,* 26 F.3d 885, 890 (9th Cir.1994). Once the movant has met its burden of showing that no evidence supports an element essential to the non-movant's claim, the burden then shifts to the non-moving party to demonstrate that there is a genuine issue in dispute. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. "The nonmoving party must identify for the court specific facts, supported by evidence, affidavits, depositions, sworn or certified copies of documents, or other material contemplated by Rule 56(e), which articulate and illustrate the presence of a genuine issue requiring trial." 11 James W. Moore et al., *Moore's Federal Practice and Procedure* § 56.13(2) (3d ed.1997).

### 2. *Plaintiffs' Claim for Violation of the Federal Advisory Committee Act*

Congress enacted FACA on October 6, 1972. The purpose of FACA is "to enhance the public accountability of advisory committees ... and to reduce wasteful expenditures on them." *Public Citizen,* 491 U.S. at 459, 109 S.Ct. 2558. To this end, FACA requires advisory committees to comply with several procedural requirements, including providing the public with notice of committee meetings in advance, permitting the public to attend meetings, and disclosing records and meeting minutes to interested persons. 5 U.S.C.App. § 10. FACA does not, however, encompass every committee that federal agencies or the executive branch consults. FACA applies only to "federal advisory committees," which it defines as:

any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof ... which is—

(A) established by statute or reorganization plan, or

(B) established or utilized by the President, or

(C) established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government, except that such term excludes (I) the Advisory Commission on Intergovernmental Relations, (ii) the Commission on Government Procurement, and (iii) any committee which is composed wholly of full-time officers or employees of the Federal Government.

5 U.S.C.App. § 3(2).

 A federal advisory committee is "established" by the federal government when a federal government entity forms an advisory committee for the purpose of obtaining advice or recommendations from that committee. *Aluminum Co. of Am. v. Nat'l Marine Fisheries Serv.*, 92 F.3d 902, 905 (9th Cir.1996); *Food Chem. News v. Young*, 900 F.2d 328, 332–33 (D.C.Cir. 1990). In *Public Citizen*, the United States Supreme Court rejected a literal reading of the word "utilized" in FACA, calling it "a woolly verb, ... left undefined by the statute itself." 491 U.S. at 452–53, 109 S.Ct. 2558. After a thorough textual analysis of the statute and its legislative history, the Supreme Court held that the word "utilized" was "added simply to clarify that FACA applies to advisory committees established by the Federal Government in a generous sense of that term, encompassing groups formed indirectly by quasi-public organizations such as the National Academy of Sciences 'for' public agencies as well as 'by' such agencies themselves." *Id.* at 462, 109 S.Ct. 2558. In order to determine whether a committee is utilized in this sense, courts test whether the federal government exercised strict "management or control of the advisory committee." *Id.* at 457–58, 109 S.Ct. 2558; *Wash. Legal Found. v. U.S. Sen-*tencing Comm'n, 17 F.3d 1446, 1450 (D.C.Cir.1994). This test inquires whether the committee in question is "purely private," whether it accepted any public funds, whether federal agencies or officials "actually" managed or controlled the committee, and whether it was formed "for the explicit purpose of furnishing advice to the Government." *Public Citizen*, 491 U.S. at 460, 109 S.Ct. 2558; *Aluminum Co. of Am.*, 92 F.3d at 906.

 Plaintiffs allege that EPA "established" FESTF, but have pointed to no evidence in the record that indicates that EPA or any federal entity actually formed FESTF. Plaintiffs state only that EPA provided FESTF with "collaboration," and "guidance ... critical to FESTF's emerging agenda." (Pl.'s Opp'n to Mot. to Dismiss at 16–17.) Even if these allegations were supported by the evidence, which they are not, this would be insufficient to indicate that EPA formed, or "established," FESTF. *See Public Citizen*, 491 U.S. at 457–58, 109 S.Ct. 2558; *Food Chem. News*, 900 F.2d at 329, 333 (holding that the Food and Drug Administration ("FDA") did not establish a committee of scientific experts that was formed by a private organization pursuant to the organization's contract with the FDA to provide counsel on product safety). A relationship between a federal entity and a developing committee does not, in itself, indicate that the government established that committee. *Public Citizen*, 491 U.S. at 457–58, 109 S.Ct. 2558. The mere fact that FESTF consulted with EPA about whether its proposed methods for obtaining and compiling data would meet OPP requirements for species proximity data simply does not show that EPA formed FESTF. *See id.* The only dispositive issue, therefore, is whether EPA "utilized" FESTF for the purpose of obtaining advice or recommendations.

■ The fact that a federal agency obtains information or advice from a committee, formally or informally, does not automatically classify the committee as a federal advisory committee subject to FACA regulations, nor does it indicate that the agency "utilizes" the committee. *Public Citizen,* 491 U.S. at 453, 109 S.Ct. 2558. In *Public Citizen,* the Supreme Court held that the ABA Committee was not a federal advisory committee, in spite of the fact that the Department of Justice regularly seeks advice from the committee regarding the qualifications of potential nominees for federal judgeships. *Id.* at 443, 109 S.Ct. 2558. The advisory nature of the Department of Justice's consultations with the ABA Committee did not indicate government "utilization" of the ABA Committee, because the Department of Justice did not establish the (private) committee, did not provide the committee with any public funds, and did not exercise strict management or control of the committee. *Id.* at 457–58, 109 S.Ct. 2558. Fitting with FACA's intended purpose, "to cure specific ills, above all the wasteful expenditure of public funds for worthless committee meetings and biased proposals," these factors set the ABA Committee apart from committees that Congress intended to harness and regulate with FACA. *Id.* at 453, 457–58, 109 S.Ct. 2558; *accord Aluminum Co. of Am.,* 92 F.3d at 906–07 (listing three main factors indicating that the government did not utilize the committee in question: the committee was privately created, did not receive public funds, and was not strictly controlled by the federal government).

In the instant case, Plaintiffs allege that FESTF was established by EPA, which, if true, would indicate that FESTF is not a purely private organization. *See Public Citizen,* 491 U.S. at 457–58, 109 S.Ct. 2558. Plaintiffs have not, however, alleged facts or pointed to evidence to substantiate their conclusory allegation. FESTF was formed by NACA, a private trade association, all of FESTF's members are private entities who manage the organization themselves, and it operates as a limited liability company. Alleged "collaboration" between EPA and FESTF is insufficient to indicate that FESTF is not a private organization. *See id.* The parties do not dispute that FESTF has never been funded by the EPA or by any public entity. It appears that Plaintiffs' only remaining contention is that FESTF is subject to EPA's strict management or control. If the evidence, viewed in the light most favorable to Plaintiffs, indicated a genuine dispute as to whether EPA exercised such control over FESTF, this would preclude summary judgment. The evidence does not, however, support this conclusion. In fact, Plaintiffs' allegations would not, even if supported by the evidence, indicate that EPA "utilized" FESTF as Congress intended the word to be understood in FACA. *See id.* Plaintiffs request a continuance to conduct discovery to obtain evidence that would purportedly substantiate the allegations it lists in the Opposition to Defendant's Motion to Dismiss. Additional discovery is unwarranted, however, because proof of these allegations would not be sufficient to indicate EPA utilization of FESTF under FACA. *See id.*

Plaintiffs allege that EPA and FESTF maintained a close relationship prior to FESTF's formal establishment as a committee and maintained this relationship after it was formed. Plaintiffs also assert that EPA encouraged FESTF's development and approved or disapproved of FESTF's proposals for meeting EPA data requirements, and that EPA acknowledged FESTF's policy goals. The undisputed facts indicate that EPA did consult with FESTF about its proposed methods for providing EPA with required species proximity data, but FESTF members formed the committee themselves, for their own

benefit as a JDDA, and now provide EPA with data to attempt to ensure that pesticides will remain or become registered in accordance with FIFRA. The "mere subsequent and optional use of the work product of a committee by a federal entity does not involve utilization under FACA." *Sofamor Danek Group. Inc. v. Gaus,* 61 F.3d 929, 933 (D.C.Cir.1995). The fact that EPA uses data compiled by FESTF to determine whether pesticides may be registered simply does not mean that FESTF is a federal advisory committee. *See id.* Communication between EPA and FESTF regarding the validity of such data was entirely appropriate, and any alleged communication addressing "policy" issues between them does not change the Court's analysis. As long as a committee is not a federal advisory committee under the legal standard delineated in *Public Citizen,* the Court does not find anything in the statute to indicate that federal agencies may not consult with such committees regarding policy issues without subjecting those committees to FACA regulations. *See* 491 U.S. at 457, 109 S.Ct. 2558. Furthermore, assuming that EPA influenced the formation of FESTF as well as its methodology for meeting OPP data requirements, this does not indicate that EPA "utilized" FESTF under FACA, because "influence is not control." *Wash. Legal Found.,* 17 F.3d at 1451.

## IV. CONCLUSION

EPA has demonstrated that there is no genuine issue of material fact as to whether FESTF is a federal advisory committee under FACA, and Plaintiffs have failed to present evidence to show otherwise. Plaintiffs have provided ample argumentative assertions that material facts remain in dispute, but none of them are specific enough to constitute a genuine issue requiring trial. *See* Moore, *supra,* § 56.13(2). Accordingly, the Court hereby GRANTS EPA's motion for summary judgment (Dkt. No. 8) and dismisses all of Plaintiffs' claims alleged in this action with prejudice. The Clerk is hereby directed to enter judgment accordingly.